## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY DIVISION

| | | |
|---|---|---|
| **MICAH LAWRENCE JAMES SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **STEPHEN M. HOWE, JOHNSON COUNTY** | ) | |
| **DISTRICT ATTORNEY,** | ) | |
| **Both in his official capacity and his individual** | ) | |
| **capacity,** | ) | |
| **150 W. Santa Fe St.,** | ) | |
| **Olathe, Kansas 66061; and** | ) | |
| | ) | |
| **CHELSEA BESHORE, JOHNSON COUNTY** | ) | |
| **ASSISTANT DISTRICT ATTORNEY,** | ) | |
| **Both in her official capacity and her individual** | ) | |
| **capacity,** | ) | |
| **150 W. Santa Fe St.,** | ) | |
| **Olathe, Kansas 66061; and** | ) | **Case No. _____** |
| | ) | |
| **ERIC WINDLER,** | ) | |
| **1900 E. 153rd Terrace,** | ) | |
| **Olathe, Kansas 66062; and** | ) | |
| | ) | |
| **THE CITY OF LENEXA, KANSAS,** | ) | |
| **17101 W. 87th St. Pkwy,** | ) | |
| **Lenexa, Kansas 66219; and** | ) | |
| | ) | |
| **JULIA BROOKS HANSEN,** | ) | |
| **713 S Meadowbrook St,** | ) | |
| **Gardner, Kansas 66030; and** | ) | |
| | ) | |
| **CHRISTOPHER TRITT,** | ) | |
| **Both in his official capacity and his individual** | ) | |
| **capacity,** | ) | |
| **16540 Moonlight Rd.,** | ) | |
| **Gardner, KS 66030; and** | ) | |
| | ) | |
| **KEVIN CURRY,** | ) | |
| **Both in his official capacity and his individual** | ) | |
| **capacity,** | ) | |

1

**Serve: 16540 Moonlight Rd.,** )
**Gardner, KS 66030; and** )
)
**BRANDON FOX,** )
**Both in his official capacity and his individual** )
**capacity,** )
**16540 Moonlight Rd.,** )
**Gardner, KS 66030; and** )
)
**THE CITY OF GARDNER, KANSAS,** )
**120 East Main Street,** )
**Gardner, Kansas 66030,** )
)
     **Defendants.** )

## COMPLAINT

 COMES NOW Plaintiff Micah Lawrence James Smith ("Plaintiff") and for his

Complaint, states the following.

### A. Parties

1. Plaintiff Micah Lawrence James Smith is a resident of the State of Kansas.

2. Defendant Stephen M. Howe (hereinafter referred to as "Defendant Howe") is the

 District Attorney for Johnson County, which includes Lenexa and Gardner. As District

 Attorney, Defendant Howe is empowered to prosecute violations of the law occurring in

 Johnson County. See K.S.A. 22a-104 (district attorney duties); K.S.A. 22-2602 (place of

 trial). District Attorney Howe is sued in his official capacity, as are his agents and

 successors.

3. Defendant Chelsea Beshore (hereinafter referred to as "Defendant Beshore") is the

 Assistant District Attorney for Johnson County, which includes Lenexa and Gardner. As

 Assistant District Attorney, Defendant Beshore is empowered to prosecute violations of

 the law occurring in Johnson County. See K.S.A. 22a-104 (district attorney duties);

K.S.A. 22-2602 (place of trial). District Attorney Beshore is sued in her official capacity, as are her agents and successors.

4.  Defendant Eric Windler (hereinafter referred to as "Defendant Windler") was at all relevant times mentioned herein a duly sworn law enforcement officer for the City of Lenexa, Kansas Police Department and is being sued in his individual and official capacity. At all times mentioned herein, Defendant Windler was acting under the color of state law. At all times relevant Defendant Windler was acting within the course and scope of his employment with Defendant City of Lenexa, Kansas and had final policy making authority concerning police activities. Additionally, Defendant Windler was responsible for the administration, implementation, and authorization of police services.

5.  Defendant City of Lenexa, Kansas is a municipality acting through its constituent, the Lenexa, Kansas Police Department (hereinafter referred to as "Defendant Lenexa P.D."). The Lenexa P.D. is located in Johnson County, Kansas. Defendant Lenexa P.D. had final policymaking authority regarding the Lenexa, Kansas Police Department and primary responsibility for the administration of activities and services of the Lenexa Police Department. At all relevant times Defendant Lenexa P.D. was the public employer of Defendant Windler.

6.  Defendant Julia Brooks Hansen (hereinafter referred to as "Defendant Hansen") is a resident of the State of Kansas.

7.  Defendant Christopher Tritt (hereinafter referred to as "Defendant Tritt") was at all relevant times mentioned herein a duly sworn law enforcement officer for the City of Gardner, Kansas Police Department and is being sued in his individual and official capacity. At all times mentioned herein, Defendant Tritt was acting under the color of

state law. At all times relevant Defendant Tritt was acting within the course and scope of his employment with Defendant City of Gardner, Kansas and had final policy making authority concerning police activities. Additionally, Defendant Tritt was responsible for the administration, implementation, and authorization of police services.

8. Defendant Kevin Curry (hereinafter referred to as "Defendant Curry") was at all relevant times mentioned herein a duly sworn law enforcement officer for the City of Gardner, Kansas Police Department and is being sued in his individual and official capacity. At all times mentioned herein, Defendant Curry was acting under the color of state law. At all times relevant Defendant Curry was acting within the course and scope of his employment with Defendant City of Gardner, Kansas and had final policy making authority concerning police activities. Additionally, Defendant Curry was responsible for the administration, implementation, and authorization of police services.

9. Defendant Brandon Fox (hereinafter referred to as "Defendant Fox") was at all relevant times mentioned herein a duly sworn law enforcement officer for the City of Gardner, Kansas Police Department and is being sued in his individual and official capacity. At all times mentioned herein, Defendant Fox was acting under the color of state law. At all times relevant Defendant Fox was acting within the course and scope of his employment with Defendant City of Gardner, Kansas and had final policy making authority concerning police activities. Additionally, Defendant Fox was responsible for the administration, implementation, and authorization of police services.

10. Defendant City of Gardner, Kansas (hereinafter referred to as "Defendant Gardner P.D."). The Gardner P.D. is located in Johnson County, Kansas. Defendant Gardner P.D. had final policymaking authority regarding the Gardner, Kansas Police Department and

primary responsibility for the administration of activities and services of the Gardner Police Department. At all relevant times Defendant Gardner P.D. was the public employer of Defendants Tritt, Curry, and Fox.

**B. Jurisdiction**

11. Jurisdiction is conferred by 28 U.S.C. § 1343, which provides for original jurisdiction of this Court in suits authorized under 42 U.S.C. § 1983, to redress the deprivation (under color of state law, statute, ordinance, regulation, custom or usage) of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens of all persons within the jurisdiction of the United States.

12. This Court also has supplemental jurisdiction over Plaintiffs' state common law claims under 28 U.S.C. § 1367.

**C. Bases of Liability: The Defendants' Violative Conduct and Practice, and Deliberate Indifference to Plaintiffs' Rights, in the Detaining, Retention, Training, Discipline and Supervision of Law Enforcement and Improper Investigation and Conduct**

13. Any and/or all of the acts or omissions of the Defendant Police Department and their Officers, took place under color of state law pursuant to, acting upon, and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders, and customs of Johnson County. Defendant Gardner P.D. and Lenexa P.D. are liable for damages caused by Defendants intentional, wrongful, reckless and negligent acts or omissions while Defendants Gardner P.D. and Lenexa P.D. and Officers were acting under color of state law and while they were acting within the course and scope of their employment

with the City of Gardner, Kansas and the City of Lenexa, Kansas. All of these acts or omissions took place under circumstances where Defendants and their corresponding government entities are liable as a governmental entity and sworn law enforcement officers in the State of Kansas. Defendants' liability is based upon allegations including the following things, all of which demonstrate patterns of behavior and deliberate indifference to the issues raised and to the rights of citizens, all of which led to deprivations of rights, privileges and immunities secured by the federal and state constitutions as well as federal and state laws:

a. Violation and deprivation of constitutional rights as set out in this Complaint;

b. Inadequate training and instruction of employees on the proper use of police power, proper investigation, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Kansas;

c. Inadequate supervision of employees as to the proper use of police power, proper investigation, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Kansas;

d. Inadequate discipline of employees as to the proper use of police power, proper investigation, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Kansas;

e. Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the proper use of police power, proper

investigation, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Kansas;

f.  Abuse of police power and arrest power on citizens of the State of Kansas;

g.  Acquiescence in and notice of the actions and omissions described throughout this Complaint;

h.  Failure to avoid, failure to thereafter investigate, and failure to thereafter re-open the underlying investigation and failure to thereafter discipline law enforcement officers for improper conflicts of interest of interested law enforcement officers investigating alleged crimes allegedly committed by citizens of the State of Kansas;

i.  Failure to take remedial action against a known pattern of misconduct by law enforcement officers, both remedial action as to the law enforcement officers and remedial action as to the underlying criminal case in which the misconduct has occurred;

j.  Failure to take significant steps to prevent a known risk of wrongful arrest, prosecution, detainment, and imprisonment;

k.  Failure to take significant steps to prevent and remedy false testimony given by a law enforcement officer in the ongoing investigation of a case eventually prosecuted by the State of Kansas;

l.  Taking aggressive law enforcement actions without first having met the standard of probable cause;

m.  Tolerance of misconduct of law enforcement officers and failing to follow up and properly and thoroughly investigate misconduct of law enforcement officers resulting in the wrongful prosecution of innocent citizens of the State of Kansas; and

n.  Deliberate indifference to, and conscious disregard of, a high risk that law enforcement officers would improperly use their influence as law enforcement officers and/or fail to protect against such use of improper influence in violation of Plaintiffs' protected rights.

14. These actions, omissions, policies, practices, procedures, patterns, decisions, orders, and customs of Defendants were the cause of the constitutional and other violations described in this Complaint. These things are established, at least in part, by proof of knowledge of, acquiescence in, or ratification of many, most, and/or all of the Defendants' wrongful conduct.

15. Defendants acted in concert, were joint tortfeasors, and/or are jointly and severally liable to Plaintiffs.

16. The conduct alleged in this Complaint violated clearly established federal- and state-protected rights of which every reasonably competent official in Defendants' respective positions would have, or should have, been aware.

17. As to Defendants' actions and omissions toward Plaintiffs, there was no objectively reasonable reliance on existing law.

**D. Factual Allegations Common to All Counts**

18. In 2023, Plaintiff was charged in Johnson County, Kansas District Court (In 23DV1140 with Criminal Deprivation of a Motor Vehicle with a Domestic Violence (DV) tag as follows:

COUNT I - That on or about the 23rd day of August 2023, in the County of Johnson and State of Kansas, MICAH LAWRENCE JAMES SMITH, did then and there unlawfully obtain or exert unauthorized control over a motor vehicle, to-wit: 2019 Subaru, with the intent to deprive the owner, to-wit: Julia Smith, of the temporary use thereof, without the owner's consent but not with the intent of depriving the owner permanently of the possession, use or benefit of the property, a class A nonperson misdemeanor, which constitutes a domestic violence offense, in violation of K.S.A. 21-5803, K.S.A. 21-6602(a)(1) and K.S.A. 22-4616. (deprivation of a motor vehicle)

19. On August 22, 2023, Defendant Gardner P.D. police were called to the home of Plaintiff and Defendant Julia Smith (his former wife, who now goes by Julia Brooks Hansen), in Gardner, Johnson County, Kansas, in reference to a child custody issue which partially stemmed from a child being picked up early from school.

20. Defendant Officers Christoper Tritt, Kevin Curry, and Brandon Fox reported for Defendant Gardner P.D. (collectively "Defendant Gardner Police") to Plaintiff's residence on August 22, 2023.

21. When Defendant Gardner Police officers arrived at Plaintiff's residence, Plaintiff's wife Defendant Hansen called and/or video called Defendant Erik Windler who represented to Defendant Gardner Police that he worked for Defendant Lenexa Police Department. See attached Exhibit 1 (police reports) which is incorporated by reference as if set forth fully herein.

22. Defendants Eric Windler and Julia Hansen conspired to intentionally and/or recklessly make false allegations of a number of various issues including a possible blackmail case wherein the Plaintiff was the suspect.

23. The alleged blackmail was taken under investigation by Defendant Gardner Police Department and the remaining issues, including which party had the children, were determined to be civil issues and the officers left the scene.

24. Any alleged blackmail was determined to be unfounded, and/or there was no evidence to support blackmail; thus, Plaintiff was never charged with the blackmail that Defendants perceived, imagined, and failed to adequately investigate.

25. On the morning of August 23, 2023, after a brief separation, the Plaintiff came to the parties' house, driving the parties jointly owned red Mazda 3.  At that time, the parties jointly owned, and jointly registered Subaru SUV was parked in the driveway of the home.  The Plaintiff parked the Mazda a block or so from the parties' house and walked to the house with Defendant Hansen's blessing to park the car wherever he wanted to park.

26. Plaintiff and Defendant Hansen were on the verge of divorce following the breakup of their polyamorous relationship with Defendant Lenexa Officer Eric Windler and his spouse.

27. Plaintiff, Defendant Hansen, Defendant Windler and his spouse are experienced swingers, and/or engage in the practice of group sex or the swapping of sexual partners within a group, especially on a habitual basis.

28. Plaintiff, Defendant Hansen, and Defendant Windler all maintained an individual Onlyfans web-page, posting videos and images of swinging and sexual images.

29. While at the house, the Plaintiff and Defendant Hansen had a number of conversations (which are mostly recorded).

30. In the first recorded conversation, Defendant Hansen expresses that she is worried she won't get the house in the divorce because she is "more emotionally fucked up" than the Plaintiff.

31. In a second recording, Defendant Hansen tells Plaintiff that she has a ride from her dad and that Plaintiff should go up and sit at the kids' schools to be sure nobody pulls the children out early as had done the day before.

32. Plaintiff states he is going to go do that. The children's schools are approximately 5 minutes from the parties' home at issue on August 23, 2023.

33. Plaintiff left the house in the parties' jointly owned Subaru and took both the keys to the Mazda and a set of the Subaru car keys. It should be noted that the Mazda has one set of keys and the Subaru has 2 sets of keys. At <u>no time</u> while the Plaintiff is at the house, does Julia ask for these keys back or simply ask Plaintiff not to leave the house with the keys or the car.

34. When the Plaintiff left, Defendant Hansen allegedly believed she was without a vehicle at the house.

35. In response to the Plaintiff leaving, rather than calling Plaintiff and asking him to come back with the keys or the car, Defendant Hansen called Defendant Windler and spoke to him for approximately 10 minutes. Defendant Windler will later admit to police that he told Defendant Hansen to call the police. Then, Defendant Hansen called the Defendant Gardner Police and claimed that she was "trapped" in her home by the Plaintiff and that he was "in control of her and the kids" at approximately 11:23 am. At 11:30 am, Gardner police officers arrive on scene.

36. Defendant Gardner Police Officers arrive quickly, and shortly after they arrive, Defendant Hansen calls Defendant Windler on FaceTime and hands the phone to Defendant Gardner Officer Curry. Defendant Windler quickly identifies himself as a Lenexa officer and is obviously already very familiar with the situation that is occurring at Defendant Hansen's house.

37. At 11:35 am, Defendant Hansen receives a text message from Plaintiff where he tells her he is at Procare (i.e., Little Building Blocks which is their son's daycare) discussing how to amicably separate and handle child related daycare issues. The evidence will show that Defendant Hansen knew at all times where Plaintiff was going and where he was located based on their discussion before he left and his texts to her after he got there.

38. While on FaceTime, Defendant Windler quickly tells Officer Curry what Defendant Windler believes has happened and where he believes the Mazda vehicle has been parked (evidencing his knowledge, time committed to this situation, and involvement in the matter). Defendant Windler directs the investigation which Defendant Gardner PD is performing and sets the narrative which Gardner then quickly adopts which leads to Plaintiff's arrest.

39. It should be noted that only the Subaru vehicle has car seats and that both of these parties regularly drive both of these vehicles. The Mazda is and/or was Defendant Hansen's daily driver to and from her employment and the Subaru is and/or was Plaintiff's daily driver since he works from home and therefore typically takes the kids to and from school. While Defendant Hansen and Defendant Windler say this several times to Defendant Officer Curry, Defendant Gardner PD does not seem to grasp which party typically drives which vehicle or that both parties regularly drive both vehicles.

Defendant Gardner PD states in their report that the Subaru is Defendant Hansen's daily driver. This is incorrect and not consistent with the evidence Defendant Gardner PD was provided on scene.

40. As Defendant Hansen tells the police, Defendant Hansen <u>never</u> called Plaintiff to request the car be returned and she acknowledged that there was little explanation for this. Further, Defendant Hansen delays sharing the facts that she and Plaintiff discussed where he was going before he left, that she agreed to Plaintiff going, that Defendant Hansen told him to go and that Defendant Hansen had a ride from her father.

41. The fact that Officer Curry spends a significant time on the FaceTime call, using Defendant Hansen's phone, with Defendant Windler is also important because, without Defendant Hansen calling her father while police are at her home, Defendant Hansen's father shows up at her house - presumably to give Defendant Hansen the ride to run the errands she told Plaintiff about prior to Plaintiff leaving.

42. Defendant Hansen eventually admits to Officer Curry that Plaintiff told her where he was going when he left the house. Defendant Curry actually reviews Defendant Hansen's text messages and therefore would have known, prior to this case being charged but after they arrested Plaintiff, that Plaintiff had continuously advised Defendant Hansen where he was located up until his arrest.

43. Criminal Deprivation of Property is a <u>specific intent</u> crime under K.S.A. 21-5803(a) which requires the "obtaining or exerting unauthorized control over property ("Obtains or exerts control" over property includes, but is not limited to, the taking, carrying away, sale, conveyance, transfer of title to, interest in, or possession of property.)" and that

Plaintiff must act "**with intent** to temporarily deprive the owner of the use thereof, without the owner's consent but not with the intent of permanently depriving".

44. In reviewing caselaw related to criminal deprivation, one will see a number of cases wherein a party loans a vehicle to someone, and the borrower fails to return the vehicle after agreed return time and/or after the lender requests the vehicle back. This is obviously very different from the case currently before this Court.

45. The crime also requires a person to commit the actus reus of "obtaining or exerting unauthorized control over property." K.S.A. 2018 Supp. 21-5803(a) ; see *State v. Hood* , 297 Kan. 388, 393, 300 P.3d 1083 (2013).

46. This definition leads to a number of issues in the present case. Notably that Defendant Hansen told Plaintiff to go pick up the children, that she had a ride with her father, that Plaintiff told Defendant Hansen where he was going, and subsequently texted Plaintiff texted her when he got there advising of where he was and what he was doing. Contrary to the facts Defendants used to detain and arrest Plaintiff, there is no evidence or even the suggestion that he had any <u>intent to temporarily deprive</u> Defendant Hansen of the Subaru.

47. In actuality, Defendant Hansen told Plaintiff to go, and Plaintiff told her he was going, and then Defendant Hansen <u>never</u> asked him to come back either by text or by phone, then Plaintiff had no idea that Defendant Hansen wanted him to bring the car back.

48. At any rate, these facts, issues, and these answers were known to Defendants Gardner PD when they arrested Plaintiff. Yet, it appears the Defendant police chose to ignore evidence that was in their possession so that they could make an arrest that day.

49. Defendant Tritt actually states to his supervisor that the vehicle being registered to both parties makes the Criminal Deprivation charge "**a stretch**" and at another point describes to his supervisor that the "**downfall is they are both on the vehicle**".

50. Officer Tritt then actually contacts the on-call Assistant District Attorney (Defendant Chelsea Beshore) to ask if they are okay to arrest Plaintiff and explain "here's our thoughts". Defendant Tritt acknowledges that this is something that they "normally wouldn't" be pursuing and the ADA (who is on speaker phone) responds that "I don't see any issue arresting on that" although she also expresses that she doesn't handle domestic violence cases and does not seem exceedingly familiar with the criminal deprivation statute. Defendant Tritt then advises Defendant Curry that the Defendant ADA said they were "good to arrest" Plaintiff and he also included the information about the Defendant ADA green lighting the arrest in his report.

51. In actuality, Defendant Howe and his department had a duty not to tell Defendant Tritt and/or any officer anywhere whether or not facts met any probable cause standard. All Defendant Howe and his department could do was recite the elements for the officer, and the Defendant Police Officers and their Departments had a duty to execute their own independent judgment as to whether probable cause was met. Then, checks and balances in our system require the DA's Office or any charging ADA to independently review the facts to determine if there was probable cause.

52. And, here there was no probable because of the false statements made by Defendants Windler and Hansen. In fact, the Court even said so in the underlying case upon dismissal. See Exhibits 2 and 3 (the hearing transcript and order of dismissal) which are incorporated by reference as if set forth fully herein.

53. The way that a vehicle (or any property) is titled provides a great deal of insight into how the parties view their interest in the property and the level of control they intend the other to have over the property. When purchasing a vehicle, how to title is something the parties must decide and therefore it is an intentional decision.

54. Per the title and registration, the Subaru is in the names of Julia Brooks Smith OR Micah James Lawrence Smith. Presumably when the parties purchased this vehicle on July 30, 2018, the decision of how to title and register their vehicle was a conscious decision based on how much control they agreed each should have over this item of property. By titling the vehicle with an "or" rather than an "and" it allows either party to have absolute control over the vehicle. Either party can sell or encumber the vehicle without the other's permission or knowledge. Officers were aware of this level of control Plaintiff possessed over this vehicle and discuss the vehicle registration being in both parties' names prior to arrest.

55. Further, the Kansas Department of Revenue offers this information on its website in regard to the titling of a motor vehicle and how the Department interprets these documents:

In Kansas, if there is more than one owner showing on the face of the title or as buyers on an assignment, the following number of signatures will be required when there is the connection between the names shown below:
- And - **All persons** listed before and after the "and" **must sign**.
- and/or - Either person listed can sign, **only one signature required**.
- Or – Either person listed can sign. **Only one signature is required.**
-
Due to difficulties with other titling jurisdictions interpretation of "and/or" differently than that from Kansas, it is suggested that if you want only one person to be allowed to sign all transactions for a vehicle, the word "or" should be used between names.
https://www.ksrevenue.gov/dovtitlefaq.html

56. Defendant Hansen has subsequently admitted she told Plaintiff he could take the Subaru on the date in question and that when he left the house he had both sets of keys in his hands. This conversation was recorded. She said that she called the police because she "didn't want you (Plaintiff) to have control over me".

57. Defendant Howe and the Johnson County District Attorney's Office's theory in the underlying criminal case was that if you take your wife's car, which is the car you drive every day, with her express permission, tell her where you are going, tell her when you get there, she never asks for you to come back, she tells you she has a ride and therefore wouldn't need the car, and her ride arrives about 10 minutes later, you have committed the crime of criminal deprivation. Under this interpretation of K.S.A. 21-5803 numerous people, who are not getting divorced, are committing this crime every day. The reality was that Plaintiff did not intend to deprive Defendant Hansen of this car when he had her express permission every step of the way.

58. Also, under Kansas Law, Plaintiff could have taken this car and sold it without Defendant Hansen's permission, and it would not have been a crime because the parties intended that each of them should have this level of control over this vehicle.

59. Thus, there was not probable cause to support this or any charge.

60. There was no evidence that Plaintiff had any intent to deprive Defendant Hansen of this vehicle or had any indication that she did not know and expressly agree with every action he took going up to the school.

61. Defendant Hansen did consent to Plaintiff taking the car and therefore cannot be temporarily deprived.

62. Moreover, the criminal case was dismissed with prejudice because there was no evidence to support probable cause that a crime was committed.

**L. Plaintiffs' Claims for Relief**

## COUNT I

**Claim Under 42 U.S.C. § 1983 for Malicious Prosecution, False Arrest, Use of Unreliable and Fraudulent Investigatory Techniques, Due Process Violations in the Procurement of Unreliable and Fabricated Evidence, and Wrongful Arrest**

**(Against all Defendants, except Hansen)**

63. Plaintiffs incorporate by reference any foregoing and succeeding paragraphs and/or any information in this Complaint as if set forth fully herein.

64. The illegal arrest, illegal confinement, malicious prosecution and wrongful conviction of Plaintiff was deliberately and intentionally brought about by Defendants. The arrest, confinement, and prosecution were the obvious and intended results of the investigation in a manner designed to prove a case against Plaintiff despite his actual innocence, which was or should have been known to the Defendants.

65. In their investigation, Defendants procured demonstrably unreliable and false evidence.

66. To compound the unreliability further, Defendants allowed a biased and interfering Lenexa Police Officer (Defendant Windler) to provide false and/or reckless information, and to interfere with, mis-direct and otherwise taint the entire investigation.

67. Defendants maintained policies and practices which ignored the constitutional obligations of the named law enforcement entities and persons to provide evidence of innocence to the defense. The policies and practices in fact discouraged the providing of exculpatory

evidence and permitted schemes, such as the one utilized in Plaintiffs' case, in which evidence of innocence was either hidden or overlooked unlawfully and in violation of good law enforcement practices and procedures.

68. The actions of the Defendants constituted unconstitutional search(es) and seizure(s) of Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The actions of the Defendants mentioned under this Count resulted in multiple violations of Plaintiff's rights to due process of law and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and subsequently in malicious prosecution to cover up any mistakes any Defendant made.

69. The actions of the Defendants mentioned in this Count also violated Plaintiffs' right to the effective assistance of counsel under the Sixth and Fourteenth Amendments because the Defendants interfered with defense counsel's ability to provide constitutionally effective assistance.

70. The actions of the Defendants mentioned in this Count also violated Plaintiffs' rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. All of these constitutional rights are protected by 42 U.S.C. ' 1983. The actions of the Defendants mentioned in this Count proximately and directly caused Plaintiff grievous and permanent injury, including nearly ten months of incarceration and the attendant loss of freedom, companionship, and income; and the attendant infliction of mental and physical pain, suffering, anguish, fear, including the fear of being incarcerated for a crime he did not commit. Plaintiffs' personal and community reputation suffered permanent damage. For these damages and injuries, Plaintiffs are entitled to monetary relief.

71. The Defendants' actions were deliberate, reckless, wanton, and/or cruel, and thus , punitive damages are justified.

## COUNT II

### Claim Under 42 U.S.C. § 1983 for Conspiracy

### (Against all Defendants, except Defendant Hansen)

72. Plaintiff incorporates by reference any foregoing and succeeding paragraphs and/or any information in this Complaint as if set forth fully herein.

73. Defendants , together and under the color of state law (except Defendant Hansen), reached an understanding, engaged in a course of conduct, and otherwise conspired among and between themselves to deprive Plaintiffs of their constitutional rights, including their right to free association and privacy, to be free from unreasonable arrest and seizure, to be free from wrongful conviction and imprisonment, to be free from malicious prosecution, to fair trial and fair access to the courts, to due process of law, to counsel, to be free from cruel and unusual punishment and all basic rights of American citizens faced with criminal sanctions. The conspiracies violated Plaintiffs' rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and 42 U.S.C. ' 1983.

74. The conspiracy was also intended to and had the effect of depriving Plaintiff of his rights to association with each other, members of their community, not the least of which is the right to privacy, in violation of their rights under the First, Ninth, and Fourteenth Amendments to the United States Constitution.

75. The Defendants named in this Count, together with unsued co-conspirators, committed the overt acts set forth in the factual statements above. The overt acts involved the wrongful arrest, prosecution, conviction, and imprisonment of Plaintiff. It also included

the manufacture of knowingly false and knowingly unreliable evidence which was intended to inculpate Plaintiff; the suppression of exculpatory evidence; intentional failure to investigate evidence which would exculpate Plaintiff; and the filing of false, misleading, and unreliable reports as part of the investigation. The conspiracy was designed to prove a case against Plaintiff despite his actual innocence which was or should have been known to Defendants.

76. The overt acts are violative of the constitutionally protected rights of Plaintiffs, under the United States Constitution and that of Kansas.

77. The conspiracies and overt acts were continuing in nature and caused Plaintiffs constitutional deprivations, injuries, pain, suffering, mental anguish, conviction, incarceration, humiliation, and loss of freedom, companionship, and income. Plaintiffs also suffered permanent damage to his personal and professional reputation. Plaintiffs are therefore entitled to monetary relief.

78. Because the actions were deliberate, reckless, wanton, and/or cruel, punitive damages are justified.

## COUNT III

### Claim Under 42 U.S.C. § 1983 for Suppression of Exculpatory Evidence

### (Against All Defendants, except Defendant Hansen)

79. Plaintiff incorporates by reference any foregoing and succeeding paragraphs and/or any information in this Complaint as if set forth fully herein.

80. Defendants, along with other investigative and prosecutorial personnel, together and under the color of state law, kept from Plaintiff and his counsel exculpatory information,

including information supporting his innocence casting doubt on the reliability of the primary witnesses against Plaintiff.

81. The withholding of various types of exculpatory evidence violated Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as protected by 42 U.S.C. ' 1983. The withholding of exculpatory evidence proximately and directly caused Plaintiff grievous and permanent injury, including loss of freedom, companionship, and income; and the attendant infliction of mental and physical pain, suffering, anguish, fear, including the fear of being incarcerated for years for a crime Plaintiff did not commit. Plaintiff's personal, business, and community reputation suffered permanent damage.

82. Plaintiff is therefore entitled to monetary relief.

83. Because the actions were deliberate, reckless, wanton, and/or cruel, punitive damages are justified.

## COUNT IV

**Claim Under 42 U.S.C. § 1983 for Municipal Liability**

**for Violative Policies, Practices and Procedures**

**(Against all Defendants, except Hansen)**

84. Plaintiff incorporates by reference any foregoing and succeeding paragraphs and/or any information in this Complaint as if set forth fully herein.

85. Defendants had in effect, both before and at the time of the events alleged in this Complaint, policies, practices, and customs which operated to deprive Plaintiff of his constitutional rights.

86. Defendants are liable under 42 U.S.C. ' 1983 because it established policies and practices that were intended to and did encourage, endorse, and reward their agents and employees for violating the constitutional rights of Plaintiff. At a minimum, the supervisors and the governmental units were deliberately indifferent to such constitutional violations. Whereas, Defendant Windler's conduct was intentional and/or a reckless disregard for the husband of his paramour, Defendant Hansen.

87. Defendants engaged in unlawful and unconstitutional policies, practices, and customs including, but not limited to the following:

    a. the failure to properly train and supervise officers in the techniques of reliably investigating serious crimes;

    b. the use of interrogation techniques which, though having an increased likelihood of obtaining information from persons, had a great likelihood of obtaining false and unreliable information from suspects and witnesses;

    c. the suppression, and/or ignoring or other exculpatory evidence;

    d. the failure to discipline officers who violate the Constitution or law or otherwise violate the rights of criminal suspects during their investigations;

    e. the failure to adequately supervise law enforcement officers known by it to have falsely testified, known by it to have destroyed evidence and known by it to have had an ongoing affair with an interested witness in a criminal prosecution;

    f. Being deliberately indifferent to the violation by law enforcement officers of the rights of the accused.

    g. And further, this includes but is not limited to each of the Government Defendants and their agents named herein, assuming as true what was told to each other, by

one of the Defendants, as a matter of what seems to presumably be some half-measure, incurious attempt at professional courtesy. As opposed to independently verifying and reviewing information provided to them by any Defendant.

88. Defendants had acquired, before and during the time periods of Plaintiff's prosecution, each of the policies, practices and customs listed in this Count.

89. Additionally, Defendants acted in concert with one another in a collaborative effort to adopt and perpetuate the unconstitutional policies, practices, and customs of each other.

90. These interrelated policies, practices, and customs, separately and together, were implemented intentionally to deprive possible targets of criminal investigations of their constitutional rights, or, at the very least were implemented with a deliberate indifference to the rights of possible targets of criminal investigation and were a direct and proximate cause of the Constitutional violations and injuries, as set forth in Counts I, II, and III of this Complaint.

## <u>COUNT V</u>

**Claim for Common Law Negligence, Defamation, Battery, Assault, False Imprisonment, Invasion of Privacy (Intrusion Upon Affairs or Seclusion; False Light; and/or, inter alia Public Disclosure of Private Facts), Negligent Misrepresentation, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Resulting in Wrongful Arrest and Malicious Prosecution**

**(Against any and/or all Defendants)**

91. Plaintiff incorporates by reference any foregoing and succeeding paragraphs and/or any information in this Complaint as if set forth fully herein.

92. If Defendants and other unnamed law enforcement and civilian co-conspirators did not act intentionally, deliberately and in bad faith, they did compile against Plaintiffs an unreliable case through negligent investigation, irresponsible procurement and destruction of evidence, and inadequate training and supervision. The City of Gardner, Kansas and the City of Lenexa, Kansas are responsible for this negligence under the doctrine of respondeat superior.

93. Defendants intruded on the private affairs and/or seclusion of Plaintiff's privacy.

94. Defendants' conduct was objectionable to a reasonable person.

95. The Defendants acted with malice and/or recklessness knowing information was false, and that the public has an interest in correct law enforcement proceedings.

96. Consequently, Defendants intentionally and/or recklessly placed Plaintiff in a false light, and/or portrayed in a baseless manner.

97. The Defendants named in this Count are responsible for negligence and/or publication of facts that resulted in the false arrest, detention, and charging of an innocent person, Plaintiff.

98. In addition to owing Plaintiff a duty of care in the period of time leading up to his prosecution, they had a duty to inquire regarding the correctness of the arrest and charging of Plaintiff.

99. The negligence in causing the incarceration and continued detention of Plaintiff, despite the existence of evidence demonstrating innocence, proximately and directly caused Plaintiff's grievous personal injury, including loss of freedom, companionship and income, and the attendant mental and physical pain, suffering, anguish, fear, including the fear of spending time in prison despite innocence. Plaintiff also suffered permanent

damage to his personal and professional reputation. Plaintiff is therefore entitled to monetary relief.

100.     Because Defendants' actions were deliberate, reckless, wanton, and/or cruel, Plaintiff is entitled to punitive damages.

## COUNT VI

### Claim Under Kansas Common Law for False Arrest

### (Against all Defendants)

101.     Plaintiffs incorporate by reference any foregoing and succeeding paragraphs and/or any information in this Complaint as if set forth fully herein.

102.     Defendants, acting in concert each with the other, did willfully and unlawfully and under color of legal authority, illegally arrest and/or permit the illegal and false arrest of Plaintiff and detained him against his will without due and legal process. As a result of the illegal and false arrest, the Defendants caused Plaintiffs grievous personal injury, including loss of freedom, companionship and income, and the attendant mental and physical pain, suffering, anguish, fear, including the fear of spending time in prison despite innocence. Plaintiff also suffered permanent damage to their personal and professional reputation. Plaintiff is therefore entitled to monetary relief.

103.     Because Defendants' actions were deliberate, reckless, wanton, and/or cruel, Plaintiff is entitled to punitive damages.

## COUNT VII

### Claim Under Kansas Common Law for Malicious Prosecution

### (Against all Defendants)

104.     Plaintiff incorporates by reference any foregoing and succeeding paragraphs and/or any information in this Complaint as if set forth fully herein.

105.     Defendants, acting in concert each with the other, did willfully, unlawfully, and maliciously cause Plaintiff to be falsely prosecuted in court and as a result of this prosecution Plaintiffs suffered great distress, pain, fear, anguish, suffering, and monetary damages.

106.     The Defendants fabricated evidence, suppressed evidence of innocence, destroyed and/or participated in the destruction of evidence, and built a case based on inaccurate and misleading information. Because of this malicious activity, Plaintiffs suffered great distress, pain, anguish, fear and suffering and monetary damages. Plaintiff also lost his freedom and suffered permanent damage to his personal and professional reputation.

107.     Because of the malicious, willful, and reckless nature of the Defendants' actions, Plaintiff is entitled to punitive damages.

108.     The actions of Defendants as alleged in all counts of this Complaint, violated Plaintiffs' civil rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, *inter alia*.

109.     The unlawful and reckless acts of the Defendants resulted in malicious prosecution, abuse of process, and false arrest, wrongful conviction and wrongful imprisonment.

110.     The unlawful and reckless acts caused Plaintiff severe emotional distress, pain, humiliation, anguish, loss of companionship, and financial loss. Plaintiff also lost their freedom, and suffered permanent damage to their personal and professional reputation. Plaintiff is therefore entitled to monetary relief.

111.     Because the Defendants' actions were deliberate, reckless, wanton and/or cruel, awards of punitive damages are justified.

## COUNT VIII

### Claim Under Kansas Common Law for Defamation and Fraud

### (Against all Defendants)

112.     Plaintiff hereby by incorporates the allegations contained in the foregoing and/or succeeding paragraphs and information as though fully set forth herein.

113.     Defendants had a duty not to orally communicate false, defamatory, and reckless statements to third-parties, including, but not limited to, Defendants, Defendant employees, the media, and the public about any allegations against Plaintiff.

114.     Defendant breached this duty by orally communicating false, defamatory, and reckless statements to third-parties, including, but not limited to, Defendants, Defendant employees, the media, and the public about any allegations against Plaintiff.

115.     As a direct, proximate and foreseeable consequence of Defendants misconduct as herein alleged, Plaintiff's reputation has been injured and Plaintiff has suffered and will continue to suffer emotional pain and suffering, severe mental anguish, emotional distress, humiliation, embarrassment, fear and deprivation of future opportunities.

116.     As a direct, proximate and foreseeable consequence of Defendants misconduct as herein alleged, Plaintiff has incurred and will continue to incur costs for medical and/or psychological treatment for the physical and emotional pain and suffering, severe mental anguish, emotional distress, humiliation, embarrassment, and fear caused by the defamatory statements of Defendants, which Plaintiff has suffered and will continue to suffer because of the defamatory statements of Defendants; additionally, Plaintiff has

incurred and will continue to incur lost monetary opportunities and/or income, as well as costs for services required in order to enable Plaintiff to recover from this nightmare.

## COUNT IX

### Claim under 42 U.S.C. § 1983 For Failure to Intervene

### (Against Defendant Police Officers)

117. Plaintiff hereby by incorporates the allegations contained in the foregoing and/or succeeding paragraphs and information as though fully set forth herein.

118. During the constitutional violations described herein, one and/or more of the Defendant Police Officers stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

119. This misconduct described in this action was objectively unreasonable and was undertaken intentionally, with malice and/or with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

120. As a result of the Defendant Police Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

121. The misconduct described in this action by the Defendant Police Officers was undertaken pursuant to the policy and violative practice(s) described herein.

## COUNT X

### Indemnification

### (Against All Defendants, except Defendant Hansen)

122.     Plaintiff incorporates by reference any foregoing and succeeding paragraphs and/or any information in this Complaint as if set forth fully herein.

123.     Kansas law requires government entities to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

124.     Here any and/or all Defendants, except Defendant Hansen, were either public entities and/or employees and/or agents of a Defendant Public Entity, acting at all relevant times within the scope of their employment committing the misconduct described herein.

125.     Thus, Defendants Howe, the Johnson County District Attorney's Office, the City of Lenexa, and the City of Gardner are obligated by Kansas statute to pay any judgment entered against their employees acting in their official capacity.

**WHEREFORE**, Plaintiff requests Judgment against the Defendants in an amount that is fair and reasonable above $75,000 to be determined by the Jury, together with their costs and attorney fees incurred herein; and for such additional relief as the Court deems just and proper under the circumstances.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court will:

a.     assume jurisdiction of this cause to determine this controversy and this case for hearing on the merits;

b.     award compensatory damages to Plaintiff, and against the defendants, jointly and severally, in an amount to be determined by the Jury above $75,000.00.

c.	award punitive damages to Plaintiff, and against the Defendants, jointly and severally, in an amount to be determined by the Jury.

d.	award to Plaintiff his costs and attorney fees, pre-judgment and post-judgment interest, all other damages allowed by law, and such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands his Constitutional Right to Jury Trial under Federal Rule of Civil Procedure 38(b).

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates United States District Court for the District of Kansas at Kansas City, Kansas as the place of trial.


DATED: August 21, 2024	**Respectfully submitted,**

**CROSS LAW FIRM, LLC**

By:  _/s/Gerald Lee Cross, Jr.____
Gerald Lee Cross, Jr. (Kan. 23573)
8001 Conser St., Ste. 280
Overland Park, Kansas 66204
Tel:   (816) 454-5297
Fax:  (913) 904-1650
lcross@crosslawfirm.us
***ATTORNEY FOR RESPONDENT***