### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF KANSAS

| | |
|---|---|
| MICAH LAWRENCE JAMES SMITH ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 2:24-cv-02376 |
| ) | |
| STEPHEN M. HOWE, et al. ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

COMES NOW Defendant City of Lenexa ("Lenexa"), through undersigned counsel, and in support of its Fed. R. Civ. P. 12(b)(6) ("Rule 12") Motion to Dismiss, provides the following:

**I.   NATURE OF THE CASE**

On its face, Plaintiff Micah Smith ("Plaintiff") has presented a Complaint that is riddled with problems, particularly regarding Lenexa. He asserts claims against nine separate defendants, both government and civilian, alleging multiple violations of his state and civil rights. (Doc. 1). He spreads these allegations across 10 separate counts, many listing multiple causes of action, against "all" or "any and/or all" defendants, the first paragraph in each count incorporating by reference "any foregoing and succeeding paragraphs and/or any information." *Id.* at ¶¶ 63, 72, 79, 84, 91, 101, 104, 112, 117, 122. Five of these are brought "[u]nder § 1983." (Counts I, II, III, IV, IX). The other five reference Kansas common law. (Counts V, VI, VII, VIII, X).

For "Bases of Liability," Plaintiff provides a four-page laundry list simply reciting the elements of various causes of action. *Id.* at 5-8. While Plaintiff includes an 11-page section labeled "Factual Allegations Common to All Counts," his accusations are so vague, meandering, and ambiguous, it is often impossible to interpret who he is even talking about. *Id.* at 8-18. In every instance, fatally far from clear is what Lenexa has to do with any of it.

This matter arises out of a domestic dispute over motor vehicles and child custody between Plaintiff Smith and his then wife, Defendant Julia Hansen ("Hansen"). *Id.* at ¶¶ 18, 19. On August 23, 2023, Plaintiff parked one of the couple's two cars some distance from their house. *Id.* ¶¶ 18, 19, 25, 33, 34, 35. He then walked the rest of the way to the house, took the other car and keys to both vehicles, and drove away, leaving Ms. Hansen feeling "trapped" at the house and concerned for her children. *Id.* Ms. Hansen called the police for help. *Id.* at ¶¶ 19, 35; Ex. 1 at 3-5. The dispute occurred in the City of Gardner, Kansas. *Id.* ¶¶ 18-19. It was investigated by the Gardner Police Department. *Id.* State criminal DV charges were filed by the Johnson County District Attorney's office as a result (23DV1140). *Id.*

According to Plaintiff's own pleadings, the nature of the relationship between Plaintiff, his ex-wife Ms. Hansen, Defendant Eric Windler ("Windler"), and Windler's wife (not a named party), was that of "friends," recently broken up from a "polyamorous relationship," where they had engaged in group sex and partner swapping. *Id.* at ¶¶ 21, 26-28. Essentially, this was a love affair gone wrong. The entirety of Windler's involvement in this matter consists of several personal phone calls with Hansen about the dispute between her and Plaintiff. *Id.* at ¶¶ 18-21, 35, 36, 38, 86; Ex. 1 at 3. That he also happened to be employed as a police officer for Lenexa at the time does nothing to change the private, personal nature of Windler's conduct. At all times pertinent to this action, when Ms. Hansen wanted the police, she called 911 and got Gardner P.D.; when she called Windler, she did so personally, as a "friend" and "paramour." *Id.* at ¶¶ 18-21, 35, 36, 38, 86; Ex. 1 at 3-4.

That's it; Lenexa's only connection is that an involved party happened to be an employee. Lenexa did not investigate, arrest, charge, prosecute, or detain Plaintiff. While Lenexa did employ Mr. Windler at the time, it did not train, supervise, direct, authorize, or cause his

2

personal, private conduct here. The Complaint establishes no other connection to Lenexa, and therefore wholly fails to state a claim against Lenexa. Lenexa should not be a party to this case.

## II. SUGGESTIONS IN SUPPORT OF MOTION

### A. Standard for Motions to Dismiss in Federal Courts

Under Fed. R. Civ. P. 8(a)(2) ("Rule 8"), a successful pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The purpose is to give a defendant fair notice of what the claims against it are and the grounds they rest upon. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It demands more than "unadorned accusations," "labels and conclusions," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. 677-78.

To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. A claim has "facial plausibility" when it contains factual content that allows the court to draw the reasonable inference that the defendant named is liable for the misconduct alleged. *Id.* Mere legal conclusions are not facts. *Id* at 679. "Plausibility" is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Id*. Where a plaintiff has alleged no set of facts to support a claim for relief, dismissal under Rule 12(b)(6) is appropriate.

Procedurally and substantively, Plaintiff's Complaint plainly fails to meet these requirements. Regarding Lenexa specifically, the Complaint is so wholly deficient, it is almost impossible to know how to respond. Plaintiff's entire "Bases for Liability" section contains nothing but threadbare, naked legal conclusions. (Doc. 1 at 5-8). And Plaintiff's "Counts" themselves suffer from these same pleading deficiencies. In Count I, for example, Plaintiff

mentions at least five separate causes of action in the heading, then lists several more in the body of that count, all in this same bare-bones, conclusory fashion, none identifying any wrong committed by Lenexa, or even mentioning Lenexa at all. *Id.* at 18-20. This clearly violates not only Rule 8(a)(2), but even Rule 10(b).

While some of these shortcomings could be attributed to poor pleading, the persistently ambiguous way Plaintiff refers to "police departments" and "police officers" is downright deceptive. For example, in ¶ 13, Plaintiff begins by talking about "[a]ny and/or all of the acts or omissions of the Defendant Police Department and their Officers." (Doc. 1 at ¶ 13). This is more than just a typo. There are two police departments named. So the disagreement of "Defendant Police Department" (singular) with "their Officers" (plural) makes it literally impossible to know whose behavior he is referencing. The terms are capitalized, but not defined or utilized earlier in the Complaint. Intentionally or not, this blurs the lines between two legally and substantively distinct entities, which is entirely improper.

Neither Lenexa nor any of its officers had any official involvement in this case. Indeed, in the "Factual Allegations" section, Plaintiff explains how it was Gardner P.D. and certain Gardner police officers that responded to the scene, conducted the investigation, interviewed witnesses, and arrested Plaintiff. *Id.* at 8-18. But he also includes vague allegations like "Defendant Police Officers and their Departments [now suddenly plural] had a duty to execute their independent judgment." *Id.* at ¶ 51. By design, Plaintiff is trying to draw attention away from the genuine actions of each party to hold Lenexa liable for the actions of others.

This becomes even more apparent in the "Claims for Relief" section, where Plaintiff refers to all "Defendants" collectively, never parsing out what party, police department, or officer(s) he means. *Id.* at 18-30. This is not just sloppy pleading; Plaintiff is intentionally

conflating Gardner P.D. and Lenexa P.D. Through this sleight of hand, he tries to gloss over the fact that Lenexa had no involvement in this case, and Plaintiff therefore has no viable claim against it. The Complaint not only lacks the requisite "factual enhancement" to establish a plausible claim against Lenexa, it contains multiple efforts to mislead and confuse both the parties and this Court.

B.  **Shotgun Pleadings Like These Are Impermissible**

There is also a significant difference between notice pleading and "shotgun pleading" in this context. *Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989). "Shotgun pleadings" are not permitted in this Circuit. *Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015); *Eaves v. Kory*, No. 24-1048, 2024 WL 2764136, at *1 (10th Cir. May 30, 2024).

A "shotgun pleading"[1] often contains lengthy and convoluted initial facts, followed by several causes of action, frequently against multiple parties, each incorporating by reference the entirety of its predecessors, but without specifying which of the several defendants are responsible for which acts or omissions. *See, e.g., Glenn,* 868 F.2d at 371; *Hart,* 605 F. App'x at 701; *Cantley v. Jacobson Holdings, Inc.*, No. 2:24-CV-02071-EFM-BGS, 2024 WL 2321083, at *2 (D. Kan. May 22, 2024). They are rife with irrelevant factual allegations and unfounded legal conclusions, foisting off onto the reader the pleading lawyer's most critical task—sifting through a mountain of facts to find the genuinely relevant ones and applying them to appropriate causes of action. *Glenn,* 868 F.2d at 371; *Hart,* 605 F. App'x at 701. That is precisely what Plaintiff's Complaint is here, and he cannot be allowed to shift this burden onto Lenexa or this Court. The Complaint should be dismissed in its entirety as an improper "shotgun pleading."

---

[1] Some jurisdictions call these "kitchen sink" pleadings, forbidding them under the same reasoning. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013); *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020).

## C. Pleading § 1983 Actions in the Tenth Circuit

The Tenth Circuit has explicitly addressed the standard for properly pleading § 1983 actions. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). These Courts have recognized that the *Twombly* standard has even "greater bite" in a § 1983 context, noting these cases often involve complex claims against multiple defendants, and thus "pose a greater likelihood of failures in notice and plausibility." *Id.* Significantly, § 1983 only provides a mechanism for enforcing individual rights "secured" elsewhere, *i.e.,* rights independently "secured by the Constitution and laws" of the United States. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). One cannot go into court and claim a "violation of § 1983," which by itself does not protect anyone against anything.

In § 1983 cases specifically, the burden rests on the plaintiff to provide fair notice of the grounds for the claims made against each individual defendant. *Robbins,* 519 F.3d at 1250. In such actions, plaintiffs often include multiple government agencies and actors, sued in both their individual and official capacities. *Id.* at 1249-50. "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* (emphasis original).

When a § 1983 complaint fails to isolate allegedly unconstitutional acts, either using the collective term "Defendants," or a list of defendants named individually, but with no distinction as to what acts are attributable to whom, it is impossible for these individuals to ascertain what particular unconstitutional acts they have allegedly committed. *Id.* That is why it is "incumbent upon a plaintiff to identify *specific* actions taken by *particular* defendants in order to make out a viable § 1983…claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (internal

citations omitted); *Vega v. Davis*, 572 F. App'x 611, 616 (10th Cir. 2014). Petitions failing to meet these criteria are ripe for dismissal. *See Robbins,* 519 F.3d at 1249-50 (citing cases).

Plaintiff's Complaint here utterly fails to meet these requirements. As outlined above, Plaintiff not only refuses to clarify "exactly *who* is alleged to have done *what* to *whom*," but intentionally creates confusion on that point. Plaintiff asserts counts against "all Defendants," and "any and/or all Defendants." This collective use of the term "Defendants" makes it impossible for Lenexa to determine what particular constitutional wrongs it is even alleged to have committed.

D.     Requirements for Pleading a § 1983 Action Against a Municipality

1. Deprivation of Plaintiff's Federal Rights Caused by Municipality

Successful § 1983 claims require a plaintiff to establish two essential elements: (1) that the defendant has deprived him of a federal right; and (2) that, in doing so, the defendant acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Some courts have viewed this as four separate requirements: (1) a violation of federal rights; (2) proximately caused; (3) by the conduct of a person; (4) acting under color of state law. *See, e.g.*, *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002). To establish municipal liability, a party must satisfy a fifth element: that the injury suffered was directly caused by the execution of an improper municipal policy or practice. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

A municipality cannot be held liable solely because it employs a tortfeasor. *Id.* at 691-95. It is well settled that *respondeat superior/*vicarious liability do not apply to municipalities under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). Many plaintiffs attempt to circumvent this requirement by alluding to improper training, supervision, custom, policy, or practice. To prevail on these claims, the custom or practice must not only be proven to exist, but

7

must also be "the moving force of the constitutional violation" with a close "causal nexus" between the action/inaction of the city and the injury alleged. *Monell*, 436 U.S. at 693-94; *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 810, 820 (1985); *Canton*, 489 U.S. at 386-88.

Any alleged city failure must rise to the level of "deliberate indifference" before § 1983 liability will apply. *Canton*, 489 U.S. at 388–89; see also *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (requiring proof of "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"). Proof of a single incident of unconstitutional activity by one individual is not sufficient to impose municipal liability. *Tuttle,* 471 U.S. at 823-24; *Murphy v. City of Tulsa,* 950 F.3d 641, 649 (10th Cir. 2019).

Plaintiff's Complaint does not meet this requirement. On its face, Plaintiff has not identified even a single improper Lenexa municipal policy that directly caused his injury. *See Monell*, 436 at 694-95. In truth, Plaintiff has not identified any improper action taken by Lenexa at all. Lenexa does have a police department that did employ Mr. Windler at the relevant time. But Lenexa cannot be held vicariously liable for Mr. Windler's private, personally motivated actions here. *See Canton,* 489 U.S. at 392. Even if Mr. Windler were found to have acted unconstitutionally in this one instance, which Lenexa does not concede, that would be insufficient to impose liability on Lenexa. *See Murphy,* 950 F.3d at 649. Simply put, there is no causal nexus between Lenexa and any injury suffered by Plaintiff, so his § 1983 claims against Lenexa must fail.

### 2. Under Color of State Law- Personal/Private Conduct

A § 1983 plaintiff must also show a deprivation of his constitutional rights committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). The "under color

of state law" requirement is "a jurisdictional requisite for a § 1983 action." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (*citing Polk County v. Dodson*, 454 U.S. 312, 315 (1981)).

The traditional definition of acting under color of state law requires that the defendant has exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49. Private conduct that is not fairly attributable to the state is simply not actionable under § 1983, no matter how discriminatory or wrongful it is. *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). The mere fact that an individual is a law enforcement officer—even if on duty at the time of the alleged wrongful conduct—does not render his acts as done "under color of state law" where the conduct was unrelated to any official duty or activity. *See, e.g.*, *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155-57 (10th Cir. 2016); *Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996). The courts have distinctly recognized that an otherwise private tort is not committed "under color of state law" simply because the tortfeasor is an employee of the state. *Jojola, supra,* at 492-94.

Courts have had frequent occasion to interpret the term "color of law" in a § 1983 setting; it is by now axiomatic that "under color of law means under pretense of law" and that "acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945); *Lindke v. Freed*, 601 U.S. 187, 196 (2024); *Hall*, 584 F.3d at 866. While there is no bright line test for distinguishing "personal pursuits" from activities under color of law, where the nature of the act is decidedly personal in nature, § 1983 liability will not apply. *See, e.g., Screws,* 325 U.S. at 111; *Haines,* 82 F.3d at 1508 (finding officers that committed prank robbery of a 7-Eleven store were engaged in personal pursuits, even though they were on duty); *Pitchell v. Callan*, 13 F.3d 545, 547–48 (2d Cir. 1994) (finding drunk off-duty officer was not acting under color of state law when he shot guest with personal weapon in his own home).

9

It would be difficult to imagine a more purely personal situation than the one at issue here. Sexuality, intimacy, romance, these are the most personal, private aspects of a person's life. Mr. Windler and Ms. Hansen were lovers, and when she got in a disagreement with her then husband, Plaintiff Smith, she called her "paramour," Windler, for emotional support. Windler did not show up in Gardner, flash his badge around, and take control of the scene. He had no official duty on behalf of Lenexa to participate in the investigation, nor was he acting under any Lenexa practice or policy. Neither Lenexa nor Mr. Windler had any jurisdiction over this Gardner case.

During the course of Gardner's investigation, yes, it was discovered that Mr. Windler worked for Lenexa, as indeed personal information like place of employment is collected from any witness in a police interview. Gardner P.D. did not take down Mr. Windler's information and statement because he was exercising power "possessed by virtue of state law," "clothed with the authority of state law," or "using [his] badge…of authority…to accomplish the [task]". *See West*, 487 U.S. at 49; *Schaffer*, 814 F.3d at 1155. Mr. Windler's involvement was as a private citizen running damage control in his personal life. The fact that Mr. Windler also happened to be a police officer for Lenexa does nothing to change the personal, private nature of his conduct. It had no connection to Mr. Windler's official duties to Lenexa. No matter how wrongful Mr. Windler's personal actions may seem, they fundamentally are not attributable to Lenexa. *See Hall,* 584 F.3d at 864; *Jojola,* 55 F.3d at 492.

### E. Conspiracy

With claims of "conspiracy" specifically, the courts have held that naked assertions, conclusory allegations, and allusions to parallel conduct, without some further factual enhancement, do not meet Rule 8 and are therefore appropriately dismissed under Rule 12(b)(6). *Twombly,* 550 U.S. at 557; *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021). To prove a

conspiracy under § 1983, a plaintiff must allege specific facts showing persons acted in concert to reach an understanding or agreement to deprive the plaintiff of some federally protected right. *Frasier, supra,* at 1024-25. The "who has done what to whom" pleading requirement is particularly important in this setting. *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022).

To establish conspiracy, the agreement must also be illegal. *Frasier,* 992 F.3d at 1025. Proof of an agreement to engage in lawful activities—including lawful investigative activities, for example—has specifically been found inadequate to support a § 1983 conspiracy claim. *See id.* (citing *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010)). Importantly, the Tenth Circuit also applies a heightened pleading requirement to § 1983 claims alleging a conspiracy involving both private individuals and state officials. *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000). Under these circumstances specifically, conspiracy claims based on subjective suspicion, speculation, or conjecture are inadequate and must fail. *Id.*

Plaintiff's Count II alleges "Conspiracy" against "all Defendants, except Defendant Hansen." Lenexa is a defendant to this action. But the body of Count II does not identify a single act or wrong committed by Lenexa. Instead, it consists entirely of the same boilerplate conclusory assertions that riddle Plaintiff's entire Complaint. It is impossible to look at Plaintiff's Count II and discern what Lenexa has allegedly done wrong or to whom.

Moreover, Lenexa did not conspire with anyone, certainly not Mr. Windler, to deprive Plaintiff of any constitutional right, nor has Plaintiff sufficiently alleged that it did. If all Mr. Windler did was participate as a private witness in another City's police investigation, then that is not a conspiracy at all. *See Frasier,* 992 F.3d at 1025. Even if Plaintiff could somehow establish that Mr. Windler had participated in a conspiracy with some of the other defendants (which Lenexa does not concede), Lenexa cannot be held vicariously liable for those actions. *See*

11

*Canton,* 489 U.S. at 392. Lenexa, the City, simply had no involvement in the underlying case. In desperation, Plaintiff lumps all Defendants together and lists a series of constitutional buzzwords, hoping to create some illusion of "conspiracy in the air." This is inadequate to properly state a conspiracy claim against Lenexa, and this Count must be dismissed.

    **F.    Official Capacity Same As Municipality**

Plaintiff suing Mr. Windler in his "individual and official capacity" does nothing to change the validity of these claims as they apply to Lenexa. The U.S. Supreme Court has held that a suit against a municipal employee in his "official capacity" is tantamount to a suit against the municipal entity itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a result, where the § 1983 plaintiff chooses to sue both a city and a city employee in an "official capacity," courts routinely dismiss the official-capacity claims as "duplicative" or "redundant" of the claim against the municipal entity. *See, e.g., Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *Burns v. Bd. of Comm'rs of Cnty. of Jackson, Kansas*, 197 F. Supp. 2d 1278, 1296–97 (D. Kan. 2002), *aff'd sub nom. Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275 (10th Cir. 2003). In the interest of efficiency and judicial economy, this Court should do the same here.

    **G.    Claims Against "Defendant Police Officers"**

Plaintiff's Count IX asserts a claim under § 1983 "Against Defendant Police Officers." Lenexa is not a "police officer," nor—as outlined above—should Lenexa be held liable for the actions or inactions of any "Defendant Police Officers" here. On its face, this count fails to state a claim against Lenexa.

### H.     No Punitive Damages

In numerous instances, Plaintiff seeks punitive damages in his § 1983 claims against Lenexa. (Doc. 1 at ¶¶ 71, 78, 83, Request for Relief (c)). A municipality is immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Whitson v. Bd. of Cnty. Commissioners of Cnty. of Sedgwick*, 106 F.4th 1063, 1073 (10th Cir. 2024). Therefore, these claims against Lenexa, a municipality, must be dismissed outright.

### I.     If No Jurisdiction Over Federal § 1983 Claims, No State Claims

Plaintiff claims this Court has original jurisdiction over his § 1983 claims under 28 U.S.C. § 1343, and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367. (Doc. 1 at 5, ¶¶ 11-12). This Court has discretion to exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.' " *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Upon pretrial disposition of federal claims, district courts will generally dismiss state law claims. *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995); *see also Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)("It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims"). Indeed, the Tenth Circuit has recognized this as the preferred practice. *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); *Ball, supra,* at 669; *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008). Because Plaintiff's federal claims fail, this Court need not retain jurisdiction over his state law claims.

**J.     State Law Claims**

Regarding Plaintiff's state law claims, the Kansas rules of civil procedure impose very similar requirements to those of the federal rules. *See* K.S.A. 60-208(a)(1) (Rule 8); K.S.A. 60-210(b) (Rule 10); K.S.A. 60-212(b)(6) (Rule 12). The same procedural troubles that riddle Plaintiff's § 1983 claims apply to Plaintiff's state law claims, and similarly call for dismissal.

Substantively, Plaintiff's state law claims are governed by the Kansas Tort Claims Act ("KTCA"), K.S.A. 75-6101, *et seq.* Under K.S.A. 75-6103, a governmental entity is only liable for damages caused by a negligent or wrongful act of an employee "while acting within the course and scope of their employment." Under the KTCA, this turns on whether: (1) the act was done for the employee's personal benefit or in furtherance of the employer's business; (2) there was express or implied authority to perform the act in question; and (3) the employee's act was reasonably foreseeable by the employer. *Com. Bank of St. Joseph, N.A. v. State*, 251 Kan. 207, 215, 833 P.2d 996, 1001 (1992). Where, as here, the employee has stepped aside from that business and done an individual wrong, the government employer is not liable. *Id.* Having failed to meet these criteria, Plaintiff's state law claims against Lenexa will be dismissed regardless.

**III.   CONCLUSION**

On its face, Plaintiff's Complaint is so deficient, it arguably fails to properly state a claim against anyone. But when it comes to Lenexa specifically, this is more than just poor pleading. Even if plead well, Lenexa has no conceivable involvement in the underlying case and no responsibility for the indisputably personal, private actions of Mr. Windler here. This is a love affair gone wrong between four people. The fact that one of these people just so happened to be a police officer for Lenexa at the time does nothing to impute employer liability for his personal,

private conduct in taking a couple of phone calls from his "paramour." Lenexa has no other connection to this situation, and Plaintiff cannot identify a single wrong committed by Lenexa.

So why has Plaintiff included Lenexa as a party? The only conceivable reason would be to gain access to another presumed deep pocket in hopes of a quick payoff. But Lenexa's pockets hold taxpayer funds, which Lenexa is obligated to protect. Plaintiff's attempt to impute liability to Lenexa, the City, for the personal and private actions of Mr. Windler in his love life is so attenuated, so far removed from any City duties, that it borders on bad faith. Plaintiff's Complaint fails on the pleadings, but no amount of creative redrafting will ever establish liability on the part of Lenexa here. For these reasons, Lenexa respectfully moves this Court to grant its Motion to Dismiss all Counts against it, for failure to state a claim under Rule 12(b)(6), and for such further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

/s/ Spencer L. Throssell
Spencer L. Throssell, KS #25699
Assistant City Attorney
City of Lenexa, Kansas
17101 W. 87th St. Pkwy
Lenexa, KS 66219
(913) 477-7626/Fax: (913) 477-7639
sthrossell@lenexa.com
**ATTORNEY FOR DEFENDANT CITY OF LENEXA, KANSAS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed and served on Plaintiff's counsel on this 25th day of September, 2024, via the CM/ECF system, which likewise provided notice to all Parties or counsel for all Parties.

/s/ Spencer L. Throssell
*Attorney for the City of Lenexa, Kansas*