IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICAH LAWRENCE JAMES SMITH,

    *Plaintiff,*

v.

STEPHEN M. HOWE, et al.,

    *Defendants.*

Case No. 24-2376-EFM-RES

**MEMORANDUM AND ORDER**

Before the Court are several motions. Defendant City of Lenexa, Kansas ("Lenexa") brings a Motion to Dismiss (Doc. 15). Defendants City of Gardner, Kansas ("Gardner"); Christopher Tritt; Kevin Curry; and Brandon Fox (collectively, the "Gardner Defendants") bring a Partial Motion to Dismiss (Doc. 17). Defendant Eric Windler brings a Motion to Dismiss (Doc. 21). Lastly, Defendants Stephen M. Howe and Chelsea Beshore bring a Motion to Quash, or in the Alternative, Motion to Dismiss (Doc. 43). Plaintiff Micah Lawrence James Smith opposes Defendants' motions and asks for leave to amend his Complaint. For the following reasons, the Court grants each Defendants' motion and denies Plaintiff's request for leave to amend his Complaint.

    **I.**    **Factual and Procedural Background**

Plaintiff was married to Julia Hansen in 2023. Plaintiff and Julia Hansen were involved in a polyamorous relationship with Eric Windler and his spouse. After the polyamorous relationship

broke up, Plaintiff and Hansen were on the verge of divorce and briefly separated. Plaintiff found other living arrangements while Hansen remained in the home she owned with Plaintiff.

On the morning of August 23, 2023, Plaintiff arrived at the house to discuss with Hansen an issue regarding child custody. Plaintiff drove a red Mazda 3 to the house and parked a block or so away from the house. A Subaru SUV was also parked in the driveway. Both vehicles were jointly owned by Plaintiff and Hansen. Plaintiff left the house in the Subaru SUV but also took the Mazda keys with him.

Hansen believed she was left without a vehicle at the house and trapped by Plaintiff. Hansen called Windler about the situation and Windler told Hansen to call the police. Hansen called the Gardner Police Department and claimed that she was trapped in her home. Gardner law enforcement Officers Titt, Curry, and Fox arrived at the house in response to Hansen's call.

While law enforcement investigated the alleged criminal deprivation of a motor vehicle, Hansen FaceTimed Windler. Windler told Curry that he was a law enforcement officer at the Lenexa Police Department. Windler also gave his opinion of what happened regarding the situation between Plaintiff and Hansen.

After conducting further investigation, Tritt called the on-call Johnson County Assistant District Attorney, Chelsea Beshore, to ask if they had enough evidence to arrest Plaintiff. Beshore served under District Attorney Stephen Howe. Beshore indicated that she saw no issue with proceeding with arrest.

Plaintiff was charged in Johnson County with Criminal Deprivation of a Motor Vehicle with a Domestic Violence tag under K.S.A. § 21-5803(b)(1)(A). Ultimately, the criminal case against Plaintiff was dismissed for lack of probable cause.

Plaintiff commenced this action against Defendants on August 21, 2024. A multitude of constitutional violations and tort claims are alleged against numerous defendants. On August 22, 2024, Plaintiff emailed the Gardner City Attorney a letter indicating Plaintiff's intent to pursue claims. Plaintiff personally served Beshore with a copy of the summons and the Complaint at a private address on August 22, 2024. On August 23, 2024, Plaintiff personally served Howe with a copy of the summons and the Complaint at the Johnson County District Attorney's Office.

On September 25, 2024, Lenexa filed its motion. The Gardner Defendants filed their motion on September 26, 2024. Windler filed his motion on September 30, 2024. Howe and Beshore filed their motion on January 9, 2025. Timely responses and replies were submitted. The motions, being fully briefed, are ripe for ruling.

## II.     Legal Standard

**A.     Motion to Dismiss**

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[1] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[2] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[3] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[4] Under Rule 12(b)(6), the court must

---

[1] Fed. R. Civ. P. 12(b)(6).

[2] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[4] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[5] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[6] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[7]

**B.      Motion to Amend**

Under Rule 15(a)(2), a motion to amend requires either "the opposing party's written consent or the court's leave," and generally courts will "freely give leave when justice so requires."[8] However, motions to amend must comply with the rules of the court,[9] and Local Rule 15.1 provides that such requests must include "a concise statement of the amendment or leave sought"[10] and "attach the proposed pleading or other document."[11]

### III.      Analysis

**A.      Lenexa's Motion to Dismiss**

Lenexa asks this Court to dismiss all claims against it (Counts I–VIII and X) for failure to state a claim upon which relief could be granted. Plaintiff asserts several § 1983 claims against Lenexa in Counts I–IV. The remainder of Plaintiff's claims against Lenexa arise under state law. The Court will first address the federal claims against Lenexa.

---

[5] *Iqbal*, 556 U.S. at 678–79.

[6] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[7] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[8] Fed. R. Civ. P. 15(a)(2).

[9] *Hulett v. Krull*, 2023 WL 3979246, at *3 (D. Kan. June 12, 2023).

[10] D. Kan. R. 15.1(a)(1).

[11] D. Kan. R. 15.1(a)(2).

       *1.     Plaintiff fails to allege sufficient facts to state § 1983 or Monell claims against Lenexa.*

Plaintiff's § 1983 claims in Counts I–III allege violations of his First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights. However, Plaintiff's Complaint fails to allege facts of how Lenexa violated those rights. Instead, Plaintiff's allegations rest on Windler's actions, who was employed as a Lenexa police officer. As such, Lenexa cannot be held vicariously liable for its subordinates' actions.[12] Therefore, the claims against Lenexa in Counts I–III are dismissed.

As to Plaintiff's *Monell* claim in Count IV, the Complaint alleges that Lenexa "established policies and practices that were intended to and did encourage, endorse, and reward their agents and employees for violating the constitutional rights of Plaintiff." It further alleges that "[a]t a minimum, the supervisors and the governmental units were deliberately indifferent to such constitutional violations."

Plaintiff's *Monell* claim fails because he does not set forth a municipal policy or custom beyond conclusory allegations. The Tenth Circuit has held that a municipal policy or custom may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[13]

---

[12] *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("Respondeat superior or vicarious liability will not attach under § 1983." (citation omitted)); *Howard v. Topeka-Shawnee Cnty. Metro. Plan. Comm'n*, 578 F. Supp. 534, 538–39 (D. Kan. 1983) (holding that no vicarious liability exists for claims brought under § 1983).

[13] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).

Plaintiff's allegations do not demonstrate a formal policy statement, an informal custom, decisions of employees with final policymaking authority, or the ratifications by final policy makers of the decisions of subordinates. The Complaint is devoid of allegations that identify a specific policy or custom, what that policy or custom trains or directs officers to do, or how that policy or custom was used to violate Plaintiff's constitutional rights. Plaintiff only superficially alleges that Lenexa's policies and practices led to the violation of Plaintiff's rights. Thus, Plaintiff's allegations do not sufficiently allege a "municipal policy or custom." Accordingly, the Court dismisses Count IV against Lenexa.

> 2. *Plaintiff fails to allege sufficient facts that Windler was acting within the scope of his employment.*

Lenexa also asks the Court to dismiss the state law claims asserted against them in Counts V–VIII and X. Lenexa argues dismissal is proper because the state law claims fall under the Kansas Tort Claims Act ("KTCA") and Plaintiff fails to allege that Windler was acting within the scope of his employment. Pursuant to K.S.A. § 75-6103, "each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment[.]" Under the KTCA, the Court determines if an employee is acting within the scope of employment by considering "(1) whether the act by the employee was done for the employee's personal benefit or in furtherance of the [employer's] business; (2) whether there was express or implied authority to perform the act in question; and (3) whether the employee's act was reasonably foreseeable by the [employer]."[14] The liability of an employer hinges upon whether the employee stepped outside the scope of the employer's prosecution of business and authority.[15]

---

[14] *Com. Bank of St. Joseph, N.A. v. State*, 251 Kan. 207, 833 P.2d 996, 1001 (1992).

[15] *Id.*

Here, Counts V–VIII and X are tort claims.[16] Lenexa is a governmental entity, and Windler is employed by Lenexa as a law enforcement officer. As such, Plaintiff must allege that Windler was acting within the scope of his employment to plausibly state his tort claims against Lenexa under the KTCA. Plaintiff has failed to do so.

Plaintiff alleges that Windler told Hansen to call the police after Hansen told him that her husband left her "trapped" at her home without a vehicle; Hansen FaceTimed Windler when Gardner law enforcement officers arrived to investigate; and Windler told Curry that he worked for Lenexa Police Department and his opinion of what happened regarding Hansen and Plaintiff. Plaintiff alleges that these actions by Windler show that he directed the Gardner officers' investigation against Plaintiff. However, the only connection to Lenexa was that Windler was employed there. The events giving rise to this cause of action are from the personal relationships between Plaintiff, Hansen, and Windler. The Complaint is devoid of factual allegations regarding whether Windler was acting in furtherance of his job duties as a law enforcement officer for Lenexa, if Windler had authority from Lenexa to speak with Gardner law enforcement officers via FaceTime, and if Windler's actions were reasonably foreseeable by Lenexa. Accordingly, Plaintiff fails to plausibly allege that Windler was acting within the scope of his employment duties with Lenexa. Thus, the Court dismisses Counts V–VIII and X against Lenexa.

### B.   Gardner Defendants' Partial Motion to Dismiss

Gardner Defendants ask this Court to dismiss Counts V–VIII against them for lack of subject matter jurisdiction. They assert that Counts V–VIII are tort claims that fall within the scope

---

[16] Count V is a claim for common law negligence, defamation, battery, assault, false imprisonment, invasion of privacy (intrusion upon affairs or seclusion; false light; and/or, inter alia public disclosure of private facts), negligent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Count VI is a claim for common law false arrest. Count VII is a claim for common law malicious prosecution. Count VIII is a claim for common law defamation and fraud. Count X is a claim for indemnification of any tort judgments or compensatory damages.

of the Kansas Tort Claims Act ("KTCA") and Plaintiff failed to comply with the notice requirement for such claims. Pursuant to K.S.A. § 12-105b(d), "[a]ny person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice . . . before commencing such action." "The notice shall be filed with the clerk or governing body of the municipality."[17] Notice sent to a city attorney does not constitute substantial compliance with the requirements of K.S.A. § 12-105b(d).[18]

"[N]o action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first."[19] "Compliance with this provision is jurisdictional in nature under Kansas law, such that 'if the statutory requirements are not met, the court cannot acquire jurisdiction' over the municipality or the employee on the claim."[20]

Here, Counts V–VIII are tort claims.[21] Gardner is a municipality and the rest of the Gardner Defendants—Tritt, Curry, and Fox—are employed as Gardner law enforcement officers. As such, the notice requirements of KTCA must be complied with for this Court to have jurisdiction over Plaintiff's claims.

---

[17] K.S.A. § 12-105b(d).

[18] *Huffman v. City of Prairie Vill.*, 980 F. Supp. 1192, 1206 (D. Kan. 1997) ("The Kansas statute is worded clearly, and we do not find that notice sent to the City Attorney constitutes substantial compliance with its requirements.").

[19] K.S.A. § 12-105b(d).

[20] *Shrum v. Cooke*, 2021 WL 3051891, at *6 (D. Kan. July 20, 2021), *aff'd*, 60 F.4th 1304 (10th Cir. 2023) (quoting *Myers v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 280 Kan. 869, 127 P.3d 319, 325 (2006)); *see also Farmers Bank & Tr. v. Homestead Cmty. Dev.*, 58 Kan. App. 2d 877, 476 P.3d 1, 14 (2020) ("Failure to file the notice deprives the district court of subject matter jurisdiction over the claim." (citation omitted)).

[21] Count V is a claim for common law negligence, defamation, battery, assault, false imprisonment, invasion of privacy (intrusion upon affairs or seclusion; false light; and/or, inter alia public disclosure of private facts), negligent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Count VI is a claim for common law false arrest. Count VII is a claim for common law malicious prosecution. Count VIII is a claim for common law defamation and fraud.

Plaintiff asserts that he substantially complied with KTCA's notice requirements. On August 22, 2024, Plaintiff sent an email to the city attorney of Gardner with a letter attached indicating Plaintiff's intent to pursue claims. However, sending the notice to the city attorney does not constitute substantial compliance with KTCA's notice requirements, as the statute is clear that the notice must be filed with the clerk or the governing body of the municipality.[22] Plaintiff otherwise fails to show that he filed the notice with the clerk or the governing body of Gardner. As such, the Court finds that Plaintiff fails to comply with the notice requirements of KTCA. Consequently, the Court does not have jurisdiction over Plaintiff's claims against the Gardner Defendants. Therefore, the Court grants the Gardner Defendants' motion and dismisses Counts V–VII against them.

### C.   Windler's Motion to Dismiss

Windler asks the Court to dismiss Counts I–X against him for failure to state a claim upon which relief could be granted. Plaintiff asserts several § 1983 claims against Windler in Counts I–IV and IX. The remainder of Plaintiff's claims against Windler arise under state law. The Court will first address the federal claims against Windler.

*1.   Plaintiff fails to allege sufficient facts to state a § 1983 claim against Windler.*

Plaintiff's § 1983 claims in Counts I–IV and IX allege violations of his First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendment rights. "To state a claim under 42 U.S.C. § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed *by a person acting under color of state law*."[23] "The 'under color of state law' requirement is 'a jurisdictional requisite for a § 1983

---

[22] *Huffman*, 980 F. Supp. at 1206.

[23] *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009) (emphasis added) (citation modified).

action.' "[24] "[P]rivate conduct that is not fairly attributable to the State is simply not actionable under § 1983, however discriminatory or wrongful the conduct is."[25]

Here, Plaintiff alleges that Windler told Hansen to call the police after Hansen told him that her husband left her "trapped" at her home without a vehicle; Hansen FaceTimed Windler when Gardner law enforcement officers arrived to investigate; and Windler told Curry that he worked for Lenexa Police Department and his opinion of what happened regarding Hansen and Plaintiff. Plaintiff alleges that these actions by Windler show that he directed the Gardner officers' investigation against Plaintiff. However, Windler's only connection to the State is that he was employed as a law enforcement officer by Lenexa. The personal relationships between Plaintiff, Hansen, and Windler are what gives rise to this suit. The Complaint is devoid of factual allegations regarding whether Windler was acting in furtherance of his law enforcement duties for Lenexa, if Windler had authority from Lenexa to speak with Gardner law enforcement officers via FaceTime, and if Windler's actions were reasonably foreseeable by Lenexa. Accordingly, Plaintiff fails to plausibly plead that Windler was acting "under color of state law." Thus, the Court dismisses Counts I–IV and IX against Windler.

2. *Plaintiff fails to allege sufficient facts to support his state law claims against Windler.*

Windler also argues that Counts V–VIII and X should be dismissed because they contain insufficient facts. These state law claims are negligence, defamation, battery, assault, false imprisonment, invasion of privacy (intrusion upon affairs or seclusion, false light, and/or, inter alia public disclosure of private facts), negligent misrepresentation, intentional infliction of emotional

---

[24] *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981)).

[25] *Hall*, 584 F.3d at 864 (quoting *Jojola*, 55 F.3d at 492).

distress, negligent infliction of emotional distress, false arrest, malicious prosecution, defamation and fraud, and indemnification. Despite the numerous claims asserted against Windler, the facts Plaintiff alleges concerning Windler are scarce.

Plaintiff alleges that Windler told Hansen to call the police after Hansen told him that her husband left her "trapped" at her home without a vehicle; Hansen FaceTimed Windler when Gardner law enforcement officers arrived to investigate; and Windler told Curry that he worked for Lenexa Police Department and his opinion of what happened regarding Hansen and Plaintiff. Within the section of the Complaint containing the enumerated Counts, Plaintiff merely list *some* elements of each claim and the legal conclusion that the element has been met in this case. As it stands, the task of determining which facts support which counts falls wholly to the Court.

To be sure, Rule 10(c) allows the adoption by reference of previous statements. But "[j]udges are not like pigs, hunting for truffles buried in briefs"[26]—or pleadings, for that matter. The few factual allegations and bare assertions supporting only some elements of the state law claims asserted against Windler fall far short of satisfying Fed. R. Civ. P. 8(a)(2). Thus, the Court dismisses Counts V–VIII and X against Windler.

**D.      Howe and Beshore's Motion to Quash, or in the Alternative, Motion to Dismiss**

Howe and Beshore move to quash service of process as insufficient under Fed. R. Civ. P. 12(b)(5). They assert that because Plaintiff brings suit against them in their official capacities, Plaintiff must comply with Fed. R. Civ. P. 4(j)(2),[27] and he has failed to do so. Plaintiff argues that he brings suit against Howe and Beshore in their individual *and* official capacities, and thus, does

---

[26] *Rocky Mt. Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913, 927 (10th Cir. 2022) (further citations and quotations omitted).

[27] Fed. R. Civ. P. 4(j)(2) governs the service of process on foreign, state, or local governments.

not need to comply with Fed. R. Civ. P. 4(j)(2). The Court will first determine whether Plaintiff sues Howe and Beshore in only their official capacities.

The Tenth Circuit has held that "in discerning whether a lawsuit is against a defendant personally or in his official capacity, the caption may be informative but clearly is not dispositive."[28] The substance of the allegations against the defendants carries more weight in determining if the claims are brought against the defendants in their official or individual capacities.[29]

Here, Howe is employed as the Johnson County District Attorney and Beshore is employed as the Johnson County Assistant District Attorney. The caption of this case identifies that Howe and Beshore are being sued in their individual and official capacities. However, Plaintiff's Complaint specifically alleges that Howe is sued in his official capacity, and all references to Howe's alleged misconduct solely involve actions taken within the scope of his employment. Plaintiff alleges that Howe and his department had a duty to not advise law enforcement on whether the facts met the probable cause standard[30] and wrongfully acted by developing an unfounded prosecutorial theory against Plaintiff. These allegations only involve Howe's duties to run his department as District Attorney and his duties as a prosecutor. Accordingly, it is clear that the allegations concern actions Howe took (or failed to take) in his official capacity as District Attorney. Thus, the Court finds that Plaintiff's claims are brought against Howe in his official capacity.

---

[28] *Ret'd Pub. Emps. of N.M. v. Propst*, 850 F. App'x 645, 647 (10th Cir. 2021) (further citations and quotations omitted).

[29] *Id.*; *Gray v. Univ. of Kansas Med. Ctr., Coll. of Health Scis., Sch. of Nursing*, 715 F. Supp. 1041, 1043 (D. Kan. 1989) ("The allegations of the complaint must be examined to determine the nature of plaintiff's cause of action); *Hale v. Emporia State Univ.*, 2016 WL 917896, at *3 (D. Kan. Mar. 8, 2016) (looking at the substance of the complaint to determine if claims were brought against defendants in their individual or official capacities).

[30] There are no allegations that Howe gave officers legal advice himself.

Additionally, Plaintiff's Complaint sues Beshore in her official capacity and alleges misconduct involving actions Beshore took within the scope of her employment. However, Plaintiff argues that when Beshore advised law enforcement officers to arrest Plaintiff, Beshore was acting individually. The Supreme Court has held that prosecutors are entitled to qualified immunity for giving legal advice to police officers.[31] Thus, the substance of the allegations against Beshore indicate that Plaintiff is suing her in both her individual and official capacity.

The Court must now determine whether Plaintiff properly served Howe and Beshore. Under Fed. R. Civ. P. 4(e), service on an individual must be made either by complying with relevant state law, or by following any of three options:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Additionally, K.S.A. § 60-304(a) provides that service is made on an individual "by serving the individual or by serving an agent authorized by appointment or by law to receive service of process."

As noted above, Plaintiff brings suit against only Beshore in her individual capacity. Beshore only disputes the service of the claims against her in her official capacity. Nonetheless, the Court will determine whether Beshore was properly served regarding the suit against her in her individual capacity. Plaintiff personally served Beshore with a copy of the summons and the Complaint at a private address on August 22, 2024. Thus, service was proper as to the claims against Beshore in her individual capacity.

---

[31] *McCormick v. City of Lawrence*, 253 F. Supp. 2d 1172, 1205 (D. Kan. 2003) (citing *Burns v. Reed*, 500 U.S. 478, 492–96 (1991)).

To the extent that Plaintiff is seeking recovery against the State of Kansas, and not purely against Howe and Beshore as individuals, he has not properly served process. Under Fed. R. Civ. P. Rule 4(j)(2), service of process against the State or one of is subdivisions must be either delivered to its chief executive officer, or otherwise served in a manner consistent with Kansas law. "A county district attorney's office, 'to the extent that it is an entity that can be sued . . . is a branch or agency of the state under applicable law."[32]

K.S.A. § 60-304(d)(5) requires service of process on the State of Kansas to be made on the Attorney General or Assistant Attorney General. Under Kansas law, "[w]hen the statute designates a particular officer to whom process must be delivered and with whom it may be left, no other officer or person can be substituted in his place. The designation of one particular officer upon whom service may be made excludes all others."[33] "The purpose of requiring service upon the Attorney General or an Assistant Attorney General is to insure the prompt notification of the Attorney General's office of all legal actions against the state. Such service allows for the subsequent coordination and supervision of the defense by the Attorney General."[34]

As explained above, Plaintiff brings suit against Howe and Beshore in their official capacities. Howe and Beshore are state officers, as they are employed as attorneys by the Johnson County District Attorney's Office. Plaintiff personally served Howe with a copy of the summons and the Complaint at the Johnson County District Attorney's Office on August 23, 2024. Additionally, Plaintiff personally served Beshore with a copy of the summons and the Complaint at a private address on August 22, 2024. Although these attempts at service would satisfy a suit

---

[32] *Brooks v. Kobach*, 2025 WL 1100048, at *4 (D. Kan. Apr. 14, 2025) (quoting *Collins v. McClain*, 207 F. Supp. 2d 1260, 1263 (D. Kan. 2002)).

[33] *Knight v. State of Kan., Bd. of Regents, Univ. of Kan. Med. Ctr.*, 1990 WL 154206, at *1 (D. Kan. Sept. 6, 1990) (citation modified) (quoting *Amy v. City of Watertown*, 130 U.S. 301, 316–17 (1889)).

[34] *Id*. at *2.

against Howe and Beshore in their individual capacities, it is not proper service of process for suit against them in their official capacities. Consequently, the Court quashes service of process on Howe and Beshore in their official capacities. As such, the Court need not address the arguments for dismissal based on lack of subject matter jurisdiction.[35]

### E.      Plaintiff's Request to Amend

In his responses to the motions to dismiss, Plaintiff briefly requests leave to amend his Complaint. "[A] request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it."[36] A plaintiff's bare request to amend his complaint in response to a motion to dismiss is insufficient.[37] Thus, the Court may deny leave to amend if a plaintiff "merely suggests she should be allowed to amend if the court concludes her pleadings are infirm."[38] For example, in *Johnson v. Spencer*, the plaintiff requested "leave to file and serve a First Amended Complaint curing the pleading deficiencies the Court sees."[39] There, the Tenth Circuit upheld the district court's denial of leave to amend because the plaintiff's request did not give adequate notice to the court or opposing party.[40] Further, Local Rule 15.1 requires plaintiffs

---

[35] The Court notes that it found service was proper against Beshore in her individual capacity; however, Howe and Beshore only alternatively argue that the claims against them in their *official* capacities should be dismissed for lack of subject matter jurisdiction. Beshore makes no such argument for dismissal of the claims against her in her individual capacity. As such, the Court need not address whether dismissal is appropriate for the individual capacity claims against Beshore.

[36] *Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43, 51 (10th Cir. 2021) (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999)).

[37] *Calderon*, 181 F.3d at 1186.

[38] *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (citation modified).

[39] *Id*.

[40] *Id*.

seeking amendment to include a "concise statement of the amendment" and attach the proposed pleading.[41]

Here, Plaintiff merely asks the Court for leave to amend his Complaint. No further information about the request to amend is provided. Plaintiff's request fails to provide adequate notice to the Court and opposing parties and does not include the "concise statement of the amendment" required by Local Rule 15.1.[42] Therefore, the Court denies Plaintiff's request to amend his complaint.

Pursuant to the above rulings, the following claims remain active in this case: Counts I–IV against Defendants Howe, Beshore, Tritt, Curry, Fox, and Gardner; Counts V–VIII against Defendants Howe, Beshore, and Hansen; Count IX against Defendants Tritt, Curry, and Fox; and Count X against Defendants Howe, Beshore, Tritt, Curry, Fox, and Gardner.

**IT IS THEREFORE ORDERED** that Defendant City of Lenexa, Kansas's Motion to Dismiss (Doc. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants City of Gardner, Kansas's; Christopher Tritt's; Kevin Curry's; and Brandon Fox's Partial Motion to Dismiss (Doc. 17) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Eric Windler's Motion to Dismiss (Doc. 21) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Stephen M. Howe's and Chelsea Beshore's Motion to Quash, or in the Alternative, Motion to Dismiss (Doc. 43) is **GRANTED.** The Court quashes service of process against Howe and Beshore for the suits against them in their official capacities

---

[41] D. Kan. R. 15.1(a)(1).

[42] *Id.*

**IT IS FURTHER ORDERED** that Plaintiff's request to amend his Complaint is **DENIED.**

**IT IS SO ORDERED.**

Dated this 3rd day of July, 2025.

*Eric F. Melgren*
ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE